# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 269 | **DATE** | 7/17/2002 |
| **CASE TITLE** | Penny Gentieu, et al vs. Tony Stone Images/Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Getty's motion for exclusion of the Pickerell Report itself is granted. (46-1) Getty's motion to bar Pickerell's testimony in its entirety is denied in favor of a piece-by-piece evaluation of that testimony if Gentieu's case survives the summary judgment motion that is to be filed by Getty. (46-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2002 | |
| | Notified counsel by telephone. | | date docketed | 61 |
| | Docketing to mail notices. | | AK | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/18/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENNY GENTIEU, et al.,          )
                                )
            Plaintiffs,         )
                                )
    v.                          )   No.  00 C 269
                                )
TONY STONE IMAGES/CHICAGO, INC.,)
et al.,                         )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

As this action neared the close of discovery--the prelude to the motion for summary judgment now scheduled to be filed by defendants Tony Stone Images/Chicago, Inc. and Getty Images, Inc. (for convenience collectively "Getty," treated as a singular noun)--Getty moved (1) to exclude the report ("Report") submitted under Fed. R. Civ. P. ("Rule") 26(a)(2)(B) by James Pickerell ("Pickerell"), who had been retained by plaintiffs Penny Gentieu and Penny Gentieu Studios, Inc. (for convenience collectively "Gentieu," also treated as a singular noun) as their proposed expert witness, and (2) relatedly to bar any evidence tendered by Pickerell either for summary judgment purposes or at trial. That motion has been fully briefed (perhaps an understatement as well as an oxymoron, for the parties' memoranda run to nearly 70 pages, even apart from their extraordinarily bulky supporting materials). This Court is now in a position to decide at least the operative principles that control the subject.

Getty really cannot be faulted for having occupied more than

35 pages of discussion in the opening memorandum, for Pickerell's effort at the rendition of a purported "expert" opinion is fundamentally flawed in a number of respects that made it necessary to take up that much space in a chapter-and-verse recitation of his claimed deficiencies. This opinion will not even approach that length and wealth of detail, because the last chapter cannot yet be written--instead it will deal with just a few matters that alone confirm the propriety of granting at least a portion of Getty's motion at this time.[1]

To begin with, there is of course no question that a witness' experience (like a witness' training or education or other background) may be the predicate for allowing opinion testimony under Fed. R. Evid. ("Rule")[2] 702. As one of the two principal drafters of both the amended version of Rule 702 and its accompanying Committee Note, both of which took effect on December 1, 2000,[3] this Court played an active role in the effort

---

[1] This shorter treatment should not however be misunderstood as registering any vote of no confidence in a number of the detailed criticisms voiced by Getty. Quite to the contrary, many of those criticisms are exceedingly well founded.

[2] No confusion should be created by this opinion's use of "Rule" as the shorthand reference for provisions of both the Federal Rules of Civil Procedure and the Federal Rules of Evidence. All of the relevant provisions of the latter are part of its 700 series, while of course the Rules of Civil Procedure carry only one- and two-digit numbering.

[3] As a then member of the Advisory Committee on the Rules of Evidence (having since succeeded to the chairmanship of that Committee), this Court acted as chairman of its subcommittee

to make that always-intended proposition even more clear. And the caselaw--<u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 148-49 (1999), which was decided while the proposed amended versions of the Rule and Counterclaim were in the public comment stage,[4] and the numerous post-<u>Kumho</u> cases that have since applied that principle (see, e.g., <u>Walker v. Soo Line R.R.</u>, 208 F.3d 581, 591 (7th Cir. 2000) and <u>Smith v. Ford Motor Co.</u>, 215 F.3d 713, 718 (7th Cir. 2000))--consistently teach the same lesson.

Because Pickerell's asserted expertise is experiential rather than scientific, the refinements articulated in <u>Kumho</u> rather than the earlier expression in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) inform the discussion here. But the fact that someone possesses experience on the

---

responsible for putting together the package of proposed amendments to Rules 701 through 703 and the corresponding Committee Notes. This should not be mistaken for a claim of authorship: It was the Committee's outstanding reporter Professor Daniel Capra who put together the initial drafts, after which this Court performed the same task of sentence-by-sentence and word-by-word fine-tooth-combing as is its practice with draft opinions that are (unlike this one) prepared by its law clerks in the first instance. Both work products were then subjected to input from the subcommittee and then from the Committee itself, after which they followed the deliberate up-the-chain process of approval through the Standing Committee on the Rules of Practice and Procedure, the Judicial Conference and ultimately the Supreme Court.

[4] <u>Kumho</u>, 526 U.S. at 156-57 cited the then-proposed Preliminary Draft of the Rule and the Committee Note. Because the Advisory Committee then had the opportunity to embody <u>Kumho</u> into the final version of the Committee Note before the revised Rule became effective, it did just that.

basis of which it may be legitimate to derive certain opinions is only the beginning, rather than the end, of the Kumho inquiry: What instead controls the admissibility or nonadmissibility of Pickerell's opinion evidence depends on whether his claimed expertise qualifies him to opine on the specific matters that he seeks to address.

For that purpose one valuable byproduct of the 1993 version of Rule 26(a)(2)(B) has been the ability of opposing parties and courts to rely on a claimed expert's report under that Rule as definitive (see the 1993 Committee Note on that subject). That report pins the expert down so that any attempted departure from its terms in the course of his or her trial testimony may be excluded--or if already proffered, may be stricken. And from the judicial standpoint, the Rule 26(a)(2)(B) report may be taken as gospel in the District Court's exercise of its Daubert-Kumho gatekeeping responsibilities.

This Court has proceeded from that premise in evaluating Pickerell and his Report. What the Report reveals is that Pickerell has ample experience in the business of stock photography, and his extensive work (and indeed his authorship of a book) in that field certainly qualifies him to provide a decisionmaker with *fact*-based background information about the business and how it functions--information that is not within general human experience and that would be useful to aid the jury

4

in understanding the evidence properly admitted in the case.[5] But that is not really the question posed by Pickerell's further efforts to opine on a number of factual issues and questions of damages, subjects to which this opinion now turns.

In those respects it must be said that Pickerell's Report reads in large part more like the expected closing argument from Gentieu's counsel than any legitimately admissible opinion testimony. It is rife with speculation about motives--about why certain actions were taken by Getty. And although this Court's review of Pickerell's CV notes no J.D. degree among his credentials, he nevertheless feels free to lecture on the meaning of the "best efforts" provision of the parties' contract and on how and why Getty assertedly breached that provision.

These criticisms should not be misunderstood as endorsing Getty's position that Pickerell's entire evidentiary submission should be stricken because of his reliance on what Gentieu told him about the asserted facts in the case, rather than performing that groundwork himself. In the old days, when the most common form of expert testimony consisted of a lawyer's hypothetical question that asked the expert to assume certain facts and to state his or her opinion based on those assumptions, the

---

[5] This should not however be taken as endorsing the large portions of the Report that volunteer hearsay conclusions or that set out Pickerell's hypothetical views as to why certain actions may have been taken.

5

proponent acted at his, her or its peril: If the assumed facts were not borne out by the evidence, the expert opinion would be rendered useless. That situation is no different in the post-hypothetical-question era when someone such as Pickerell identifies the asserted facts on which his opinion testimony is built. In that situation a jury may choose to believe or disbelieve that underlying evidence (in this instance, expected to be submitted by Gentieu)--and if the evidence is disbelieved, Pickerell's opinion based on it would fall as well.

But in that respect the trial court's threshold role has become more proactive, as is signaled by the Daubert-Kumho references to its "gatekeeping" function. Here is how Goodwin v. MTD Prods., Inc., 232 F.3d 600, 608-09 (7th Cir. 2000)(footnote quotation from the Bourelle case omitted) has reconfirmed that activist responsibility:

> In Bourelle v. Crown Equipment Corp., 220 F.3d 532, 536 (7th Cir.2000)(footnote in original), this court stated that
>
>> [i]n the recent and well-recognized Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that Fed. R. Evid. 702 imposes on the trial court the obligation, when dealing with expert witnesses, to ensure that scientific testimony is "not only relevant but reliable." In Kumho [Tire Co., Ltd. v. Carmichael], the Supreme Court clarified its decision in Daubert and held that "this basic gatekeeping obligation" applies to all expert testimony. 526 U.S. [137,] 147[, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)]. Thus, the

6

> trial judge must determine whether [an
> expert's] opinion was grounded in the
> "methods and procedures of science," <u>Daubert</u>,
> 509 U.S. at 590, 113 S.Ct. 2786, and whether
> such testimony had sufficient "factual
> underpinnings," <u>Walker v. Soo Line R.R. Co.</u>,
> 208 F.3d 581, 586 (7th Cir.2000).

Furthermore, as the Supreme Court elaborated:

> The objective of [<u>Daubert</u>'s gatekeeping]
> requirement is to ensure the reliability and
> relevancy of expert testimony. It is to make
> certain that an expert, whether basing
> testimony upon professional studies or
> personal experience, employs in the courtroom
> the same level of intellectual rigor that
> characterizes the practice of an expert in
> the relevant field.

<u>Kumho</u>, 526 U.S. at 152, 119 S.Ct. 1167. Also, "[i]t is axiomatic that proffered expert testimony must be 'derived by the scientific method [.]'" <u>Clark</u>, 192 F.3d at 756 (citations and internal quotations omitted).

In those terms Pickerell's methodology is certainly suspect, among other reasons (1) because of his ipse dixit tendencies that have no apparent grounding in any scientific method, (2) because of his unquestioning reliance on what Gentieu told him as the basis for his various conclusions and (3) because it appears clear from Getty's submissions that various of his conclusions are without sufficient factual underpinning to pass the required "reliability" test. Indeed, given the wealth of experience and knowhow to which Pickerell points as the predicate for allowance of his evidence, he might have been expected to do some of his own vetting of Gentieu's information before he launched on the

opinions he has generated. That type of verification would have placed Pickerell on far better paper (both literally and figuratively) in terms of his hoping to meet the Daubert-Kumho reliability standard.

But the bottom line at this stage of the game is that (1) Getty's motion for exclusion of the Pickerell Report itself is granted, but only because such reports themselves (as contrasted with any anticipated testimony contemplated by the Report) are not admissible in evidence, and (2) Getty's motion to bar Pickerell's testimony in its entirety is denied in favor of a piece-by-piece evaluation of that testimony if Gentieu's case survives the summary judgment motion that is to be filed by Getty. Any further action as to the specifics of the Pickerell Report, and as to how it may or may not play a role in the disposition of this case, will more profitably await the consideration or decision of that motion.[6]

                                                                            _____
                                                                            Milton I. Shadur
                                                                            Senior United States District Judge

Date: July 17, 2002

---

[6] To that end each party may address the Report, or any of its contents, as it deems appropriate in the presentation of or opposition to the Rule 56 motion. But again it must be kept in mind that the Report as such is not admissible evidence.

8