# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 269 | DATE | 1/13/2003 |
| CASE TITLE | Penny Gentieu, et al vs. Tony Stone Images | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. By reasons of the payments recently made by Getty, all aspects of Gentieu's claims for unpaid or late-paid license fees, including the related claims for interest and audit costs, are dismissed because no Article III case or controversy survives in those respects. Finally, this action is set for a status hearing at 9:15 a.m. January 16, 2003 to set a schedule for the completion of briefing on Getty's long-pending motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 15 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | AWR | 88 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/14/2003 | |
| | | 03 JAN 14 PM 4:45 | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENNY GENTIEU, et al.,                )
                                      )
            Plaintiffs,               )
                                      )
    v.                                )   No. 00 C 269
                                      )
TONY STONE IMAGES/CHICAGO, INC.,      )
et al.,                               )
                                      )
            Defendants.               )

JAN 1 3 2003

## MEMORANDUM OPINION AND ORDER

In a commendable effort to cabin somewhat the scope of the parties' differences in this bitterly contested litigation, defendants Tony Stone Images/Chicago, Inc. and Getty Images, Inc. (collectively "Getty," treated as a singular noun) have opted to forgo challenges to the portion of the claims that have been advanced by Penny Gentieu and Penny Gentieu Studio, Inc. (collectively "Gentieu," treated as a singular noun of the feminine gender) that relates to assertedly unpaid and late-paid license fees. As Getty describes that decision at page 2 of its Renewed 12(b)(1) Motion To Dismiss Plaintiffs' Unpaid License Fee, Interest and Audit Claims (cited "Motion"):

> In a December 13, 2002 letter (Exh. 1), Gentieu provided for the first time a final figure on the unpaid and late paid license claim, namely $101,397.10 (including interest). Although Getty maintains that not all of this amount is actually due Gentieu, in the interests of amicably settling the dispute and avoiding the high costs of determining an accurate figure through litigation, Getty has tendered Gentieu a check for the full amount. (See Exh. 2).

Gentieu has now filed her "Plaintiff's Response to Defendants'

Renewed 12(b)(1) Motion" (cited "Response"). Gentieu begins by "agree[ing] that the amounts owed to plaintiff under the terms of the 1993 Contract can be determined as a matter of law, and that payment to plaintiff of those amounts would render plaintiff's claims for payment of those amounts moot" (Response at 1). But Gentieu then goes on to dispute Getty's contentions (1) that any attempted claim of breach of fiduciary duty as to such nonpayments and late payments is foreclosed and (2) that the charges Gentieu seeks to collect as "all reasonable costs and expenses of such audit" of those items are excessive.

In that latter respect, here is what the relevant paragraph of the parties' contractual arrangement (entitled "Contributor's Agreement With TSI" and cited here as "Agreement") says (Agreement ¶7.5):

> In the unlikely event of reasonable grounds for a material dispute between the Contributor [Gentieu] and TSI [Getty], regarding the licensing of her pictures, the Contributor or a designated professional representative shall have the right, upon reasonable notice and during regular business hours, to inspect TSI's books and records and to make extracts thereof as same relate to Contributor's images. The Contributor will bear the cost of such an audit. In the event, as a result of such an audit, that it is determined that TSI has underpaid Contributor by an amount equal to or in excess of five percent (5%) of all the monies due to the Contributor (or $1500.00, whichever is greater), then TSI shall bear all reasonable costs and expenses of such audit as well as remitting to Contributor all past due sums with interest to date. The foregoing shall not be deemed to be a waiver of or limitation upon Contributor's other rights or remedies in the event of such underpayment.

2

This opinion will first look at the contested issue stemming from that language--the amount properly chargeable to Getty for the audit--and will then turn to the fiduciary duty question.

As for the parties' dispute over "all reasonable costs and expenses of such audit," Gentieu claims that the phrase embraces each of the items that she refers to in her October 28, 2002 statement (photocopy attached), which she has labeled "Cost of the Stonewalled Audit." As that statement reflects, Gentieu's modest self-evaluation of her time as worth $100 an hour beggars the amount that was charged by the professional--the accountant--whom she retained to do the work and who produced a 113-page report: By Gentieu's lights her work was worth almost twice that of the accountant ($12,800 against $6,500)--and part of her claim for payment into her own pocket includes a 32% add-on to the accountant's charges attributable to Gentieu's self-perceived need to "report" on the accountant's own report (21 hours of her time, for a claimed fee of $2,100).

Quite apart from the traits of greed as well as immodesty that are revealed by that effort,[1] Gentieu's position distorts

---

[1] In light of Gentieu's proposed inclusion of her "research" time and travel time as also chargeable at the $100 hourly rate, simply considering her self-evaluation in terms of a 40 hour work week would seem conservative. But even under such a conservative approach Gentieu wants to collect for her services as though she were worth $200,000 a year in a field for which she has no professional training or expertise. When confronted with like efforts at overreaching even by professionals such as lawyers who make similarly exorbitant demands, our Court of

the terms of the Agreement. Agreement ¶7.5 gave Gentieu alternative options if she felt she had been underpaid: She (as the "Contributor") could choose to review Getty's books and records herself or she could hire a "designated professional representative" to conduct that review. But what Agreement ¶7.5 specifically did not confer was the opportunity for the review to be conducted by both Gentieu and a professional accountant, at a cost nearly three times the accountant's $6,500 charge for generating the extensive report. That proposed approach by Gentieu unquestionably flunks the standard of "reasonable" expenses, as well as not reading literally on the disjunctive language of Agreement ¶7.5 itself.

There were of course perfectly good reasons for Gentieu to opt (as she did) for the contractual alternative of hiring a

---

Appeals has not been diffident about rejecting an award entirely (see, e.g., Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) and Vocca v. Playboy Hotel of Chicago, Inc., 686 F.2d 605, 607-08 (7th Cir. 1982)(per curiam)), and several other Circuits have followed the Seventh Circuit's lead by doing the same (see, e.g., Scham v. District Courts Trying Criminal Cases, 148 F.3d 555, 557-58 (5th Cir. 1998) and cases cited there). This might be thought of as the judicial equivalent of implementing the old saw about speculators in the stock market who are overly intent on self-perceived get-rich-quick opportunities:

> Bulls may sometimes make money, and bears may sometimes make money, but hogs get slaughtered.

What has just been said could independently justify the entire rejection of Gentieu's claim (even its legitimate components). This opinion will nonetheless go on to demonstrate other reasons for reaching a less draconian result.

4

professional. For one thing, any audit is far more readily and effectively handled by an accountant who is accustomed to such number crunching. For another, the work product of such an independent analyst would obviously be less likely to be challenged, and would be far more likely to prevail in the case of challenge, than the patently self-interested efforts of Gentieu herself. And relatedly, if the results of the audit were to give rise to the shifting of costs under the provisions of Agreement ¶7.5, the regular and customary charges for an accountant's time would pose none of the obvious problems as to valuation that would be presented by the other option of Gentieu's doing the job herself if the potential for shifting of costs and expenses materialized: For one thing, it would obviate the inevitable dispute as to whether the concept stated in Agreement ¶7.5 included <u>any</u> recovery for devoting one's own time (which is certainly not the normal reading of "reasonable costs and expenses") and, even if that question received an affirmative answer, it would obviate the difficulty of placing a proper value on the principal's own time.[2]

Nor is the analysis altered by Gentieu's decision, once having chosen to hire an accountant, to work with that

---

[2] What has been said in this paragraph of the text is only exemplary of the reasons that would logically lead to having the inspection and analysis conducted by an outside and independent professional. There may well be other good and sufficient reasons that this Court has not thought of.

5

professional (this, it should be said, would still not provide a justification for sticking Getty with the charges covering Gentieu's "research," whatever that is, her travel or her "report" on the accountant's work product). It will be remembered that under the Agreement Gentieu had to bear the costs of the audit herself unless a disparity at a certain level were shown. It would be quite understandable, then, that she would seek to limit her own potential exposure to bearing the payment of professional fees by trying to hold down the level of those fees. But once again that choice of participation on her part does not support recovery against Getty for her own time as well once Agreement ¶7.5 caused the professional's fees to be shifted to Getty.

In sum, all of the proposed charges for Gentieu's own time on her October 28, 2002 statement are rejected. That leaves for consideration the item on that statement of "Legal Fees" in the sum of $6,662.50, a proposed charge that is also disputed by Getty.

That question really requires much less discussion. It would certainly represent an odd locution to treat the language "all reasonable costs and expenses of such audit" as somehow extending to lawyers' fees, when the lawyers did not participate in the audit directly. To that approach, based on the normal meaning of the Agreement's language, it is surely appropriate to

add the familiar concept that under the American Rule everyone bears his, her or its own attorneys' fees unless otherwise provided by statute or contract. In the latter respect, the provision in Agreement ¶12.8 for the recovery of attorney's fees (among other items) by a prevailing party in any action to enforce the Agreement's terms shows that the parties knew very well how to provide expressly for the recovery of such fees when they wished to do so. And when no such provision has been included in Agreement ¶7.5, this Court rejects Gentieu's attempt to engraft any such obligation as either implicit in or implied from a place where it is conspicuous by its absence. Hence that $6,662.50 figure is also excludable from the recoverable "costs and expenses of such audit."

When those exclusions and the corresponding interest charge are taken out of Gentieu's claims, what remains for payment is the sum of $9,658.61. And because Motion Ex. 2 (a December 17, 2002 letter from Getty's lawyers to Gentieu's lawyers) shows that Getty has in fact paid that amount as well as the $101,397.10 that constitutes Gentieu's entire claim for unpaid and late-paid license fees,[3] Gentieu's entire sustainable claim in this aspect of its lawsuit has been satisfied in full.

With both the quantification and payment of Gentieu's claim

---

[3] It seems that the latter figure may actually represent a $125 overpayment according to the December 13, 2002 letter from Gentieu's counsel. If so, de minimis non curat lex.

7

in this area thus having been resolved, all that is left to consider is Getty's request "for clarification as to the effect of a dismissal on Gentieu's claims for breach of fiduciary duty based on the same alleged conduct" (Motion at 1). In that regard Getty adverts in part to the statement in Jordan v. Duff & Phelps, Inc., 815 F.2d 429, 436 (7th Cir. 1987) as to the inappropriateness of claims of breach of fiduciary duty where the litigants have (as here) entered into detailed contractual arrangements:

> Because the fiduciary duty is a standby or off-the-rack guess about what parties would agree to if they dickered about the subject explicitly, parties may contract with greater specificity for other arrangements.

But even more particularly, Getty negates any purported breach of fiduciary duty in this part of the case by pointing to the manner in which Gentieu has shaped her own Complaint as well as her later responses to Getty's discovery requests.

As for Gentieu's Complaint, which comprises a 23-page 60-paragraph detailed statement of her claims accompanied by a half-inch thick package of Exs. A through L, its Paragraphs 11 through 14 deal with what is captioned as "TSI's Failure to Pay What Photographer Was Due"--and not a word is said there about fiduciary obligations. By sharp contrast, Paragraphs 19 and 20 were expressly captioned "TSI's Breach of Fiduciary Duties to Photographer"--and they dealt with some totally different facets

8

of Getty's asserted activities that operated to Gentieu's disadvantage.

In short, Gentieu's Complaint in no way characterizes the accounting issues that are dealt with in this opinion as implicating any claimed breach of fiduciary duty. When in August 2000 Getty's counsel, in the course of discovery, then followed up by asking Gentieu (among other interrogatories) to "[s]tate with particularity all facts and theories upon which Gentieu bases its assertion that [Defendants have] breached any fiduciary duty to Gentieu including....(c) all damages Gentieu contends she has suffered," Gentieu's response did nothing more than to refer to the Complaint and to say that no information as to damages could be given until Getty answered Gentieu's discovery requests. That response was supplemented more than a year later (in mid-October 2001) with the selfsame responses, supplemented only by a citation to depositions of persons that related to the limited fiduciary duty claim stated in the Complaint. No further supplementation or modification has taken place in the 15 months since then.

Under these circumstances, it must be concluded that Getty has justifiably relied on the way in which Gentieu and her lawyers have themselves characterized their case: In an effort to simplify an already overly complex matter and to get on toward disposition of the rest of the case, Getty has made a full

payment of the claim at issue, rather than engaging in any
legitimately assertable disputes over any part of that claim. It
simply will not do for Gentieu, who has had more than ample
opportunity to consider and reconsider the scope of her fiduciary
duty claim over the span of fully three years (this case reaches
its third anniversary tomorrow), to engage in a belated attack
under that label that had never been in her or her lawyers'
contemplation.[4]

## Conclusion

By reason of the payments recently made by Getty, all
aspects of Gentieu's claims for unpaid or late-paid license fees,
including the related claims for interest and audit costs, are
dismissed because no Article III case or controversy survives in
those respects. This dismissal also encompasses all arguable
collateral and related claims (including any claim for breach of
fiduciary duty stemming from those matters), in the same manner
that a general release would preclude Gentieu from asserting any
related claims. Finally, this action is set for a status hearing
at 9:15 a.m. January 16, 2003 to set a schedule for the
completion of briefing on Getty's long-pending motion for summary

---

[4] Gentieu has changed counsel during this past year, but
any such efforts at revisionist history by the new lawyers would
do violence to the notion that replacement counsel take a case
cum onere--or less elegantly, warts and all.

judgment.[5]

_____
Milton I. Shadur
Senior United States District Judge

Date:   January 13, 2003

---

[5] That setting replaces the previously set January 22 status hearing.

11

Penny Gentieu Studio Inc.
78 Prospect Park West
Brooklyn, NY 11215
718-788-0570
penny@babystock.com

October 28, 2002

Cost of the Stonewalled Audit

| | |
|---|---:|
| Legal Fees | 6,662.50 |
| Accountant Fees | 6,500.00 |
| Travel | 1,805.89 |
| Photocopies | 55.20 |
| Photographs (1 roll) | 38.50 |
| Gentieu's time: research, June 1999 (35 hours) | 3,500.00 |
| Gentieu's time: preparation, Oct./Nov. 1999 (40 hours) | 4,000.00 |
| Gentieu's time: audit, travel, follow-up week of audit (32 hours) | 3,200.00 |
| Gentieu's time: report on the 113 page report (21 hours) | 2,100.00 |
| | |
| Subtotal | 27,862.09 |
| Plus interest, 5% per year | 4,179.31 |
| Total Due: | 32,041.40 |