# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 269 | **DATE** | 8/28/2003 |
| **CASE TITLE** | Penny Gentieu, et al vs. Tony Stone Images/Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons explained at some length in this opinion, Gentieu's petition for fees and expenses is denied. Getty's request for a fee award is granted in full, comprising (1) all fees related to Gentieu's copyright and fiduciary duty claims (a sum of $503,959.50), (2) 2/3 of the fees related to general litigation work (or $161,922.97) and (3) 2/3 of its out-of-pocket expenses (or $62,425.76), for a total recovery of $728,308.23. Gentieu is ordered to pay that amount to Getty on or before September 12, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 119 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/28/2003 | |
| | | 03 AUG 28 PM 5:26 | date mailed notice | |
| | courtroom | | | |
| SN | deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENNY GENTIEU, et al.,     )
                           )
          Plaintiffs,      )
                           )
     v.                    )    No.  00 C 269
                           )
TONY STONE IMAGES/CHICAGO, INC., )
et al.,                    )
                           )
          Defendants.      )

DOCKETED
AUG 29 2003

## MEMORANDUM OPINION AND ORDER

This extensively (and hotly) contested action ended in almost total defeat for plaintiffs Penny Gentieu and her corporation Penny Gentieu Studio, Inc (collectively "Gentieu," treated as in earlier opinions as a singular feminine noun): Except for the recovery of unpaid license fees that defendants Tony Stone Images/Chicago, Inc. and Getty Images, Inc. (collectively referred to as in earlier opinions as "Getty," also treated as a singular noun) had been prepared to acknowledge and honor from the very beginning, this Court's lengthy March 26, 2003 memorandum opinion and order (255 F.Supp.2d 838, cited as "Opinion at --"[1]) rejected all of Gentieu's massive claims as not only meritless but in principal part as frivolous.

With Gentieu having appealed that adverse decision, what remains for consideration are the parties' cross-motions for awards of attorneys' fees and expenses. This memorandum opinion

---

[1] Other defined terms in the Opinion will also be referred to in the same terms here.

and order deals with those claims.

## Sources of Fee Shifting

Gentieu ties her proposed recovery of fees to the notion that she is "the prevailing Party" for purposes of the written agreement between the parties, 1993 Contract ¶12.8:

> In any action to enforce the terms of this Agreement, the prevailing Party shall be entitled to recover their court costs, attorney's fees and other non-reimbursable expenses, such as expert witness fees and investigation expenses.

Although the partial recovery that Gentieu obtained related solely to what she lists as the "license fee recovery accounting/audit issue," she attempts to build up a claimed recovery of over $133,000 in the fashion reflected in the parties' joint statement submitted pursuant to this District Court's LR 54.3(e)(see Ex. 1 to this Opinion).

For its part, Getty also invokes the "prevailing Party" provision of the 1993 Contract, pointing to its success in having torpedoed all of Gentieu's contract-based claims save one. Getty also seeks the shifting of fees in connection with its successful (and total) defeat of Gentieu's attempted copyright infringement claims, citing for that purpose the statutory provision in the Copyright Act (17 U.S.C. §505 ("Section 505")):

> Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

This opinion will first address the parties' opposing claims

2

for fee awards under the 1993 Contract. It will then turn to a much shorter discussion of the Copyright Act issue, as to which Getty plainly has Gentieu dead to rights.

### Breach of Contract Claims

Because the 1993 Contract refers to "the prevailing Party" (in the singular) in any enforcement action, one permissible approach to the litigants' claims would be to place their respective successes or failures in the scales and to award fees only to the one side in whose favor the scales tipped. That possible reading could be gleaned from what has been said in one or two of the cases cited by Getty on the subject. But a different approach of evaluating success in relation to each contract claim separately, and then awarding fees to the party that prevailed on that claim, seems more finely attuned to the purpose of the 1993 Contract's fees provision--and such a reading is also consistent with the treatment of attorneys' fees in Moriarty v. Svec, 233 F.3d 955, 963-68 (7th Cir. 2000), the most recent of the cases cited by Getty on the subject (at its Mem. 13).

Gentieu attempts to squirm out from under the consequences of either of those approaches by contending that her only breach of contract claim was the one seeking the payment of license fees that she ultimately collected when Getty agreed to them (as it had been prepared to do from the very outset). But that position

seeks to rewrite the litigation history with a vengeance:

    1.  Gentieu expressly predicated her most serious claim--that of Getty's claimed breach of fiduciary duty--on the principal-agent relationship created by the 1993 Contract, which triggered fiduciary obligations on the part of agent Getty (see Opinion at 864-65). And Gentieu was a dead-bang loser on that claim, as to which Getty obtained summary judgment (id. at 866).

    2.  All of Gentieu's other claims also sounded in breach of contract, as Opinion at 866 (footnote omitted) clearly set out:

> At long last the end is in sight. This opinion must finally address Gentieu's argument that Getty breached the 1993 Contract in three different ways: (1) that Getty's purported licensing improprieties, described above as exceeding the scope of the license, violated specific provisions of the contract, (2) that other conduct by Getty breached the contract's "best efforts" clause and (3) that all of those acts by Getty breached an implied covenant of good faith and fair dealing. Again the claims are addressed in turn.

And after the ensuing careful analysis of each of Gentieu's contentions, Opinion at 870 granted summary judgment in Getty's favor there as well.

There is thus no question but that Getty is <u>a</u> prevailing party--and under a permissible view as indicated earlier, <u>the</u> (in the sense of "only") prevailing party--as to all of Gentieu's

1993 Contract claims other than the license fee matter (as to
which Getty does not request any fee award). That having been
said, this opinion--to minimize the extent to which any parsing
of Getty's claims may be required--will defer translating that
conclusion into a dollar award until after its discussion of the
propriety of an award under Section 505.

But before this Court turns to that Copyright Act issue, it
will review the only other breach of contract issue--a potential
award to Gentieu on her license fee claim. In that respect, even
though Gentieu certainly prevailed on that claim, her request for
fees faces two major hurdles.

First, even apart from the question of characterizing her as
"the prevailing Party" as a matter of contract interpretation
where her recovery was so small in relation to her much larger
claims that proved groundless (indeed, in substantial part wholly
frivolous),[2] there is a serious problem with rewarding Gentieu by
a shifting of fees--or at least any meaningful amount of fees--on
that claim. As Opinion at 870 (footnote omitted) has said:

> Although Gentieu had a legitimate claim for unpaid
> royalties under the 1993 Contract when this lawsuit was
> instituted, it is one that could have been resolved
> long since--and without the enormous expenditure

---

[2] In that regard, our Court of Appeals has held (for
example) that a party that recovered over $1 million when it had
demanded something over $25 million on a breach of contract claim
was not a prevailing party so as to be awarded any attorneys'
fees--even for time spent on that claim (Bankcard Am., Inc. v.
Universal Bankcard Sys., Inc., 303 F.3d 477, 486 (7th Cir.
2000)).

5

(really a waste) of resources that has ensued--if she had not coupled that claim with contentions obviously ascribable to an overexaggerated sense of self-importance.

Less than a month after suit was filed here in January 2000, Getty's then counsel then offered to settle the entire matter through alternative dispute resolution, with an independent third-party auditor to be engaged to perform a financial audit of the parties' relationship, with the parties to divide the expense of the audit evenly, with the auditor's decision to be final and unreviewable judicially, and with each side to bear its own costs and fees, including attorneys' fees (see the marginally marked portion of Ex. 2). Because Gentieu was dead set on advancing the other claims on which she later suffered total defeat, she rejected that proposal.

About a year later, after Getty's present counsel had come into the case, they renewed a like offer--this time suggesting an auditor from Ernst & Young and offering to bear all of the costs of the audit (estimated at $50,000 to $60,000 plus expenses), even though the 1993 Contract had a different provision under which Gentieu was to bear the cost of an audit unless a disparity of 5% or more were to be revealed. That offer was rejected less than a week later on the ground that the Ernst & Young auditor was not "the right 'man' for the job," though Gentieu never suggested any alternative.

Finally, some eight months later Getty submitted a Fed. R.

Civ. P. ("Rule") 68 offer on the license fee claim, including interest. This Court recharacterized Getty's offer as one of settlement, for it could not have produced a final judgment--but after months of ensuing litigation, Gentieu acknowledged that the offer represented "100 cents on the dollar" and accepted the offer.

This recital is not at all intended to question any party's right to have disputes resolved in court. Instead the point is that Gentieu's incurring of fees to obtain the result that Getty was really prepared to proffer from the outset was largely a self-inflicted wound, driven as it was by Gentieu's totally unrealistic perception of her other claims. And our Court of Appeals has taught on more than one occasion that such rejections of settlement can properly play a significant role in determining a fee award, or even as to whether fees should be awarded at all--see, e.g., Moriarty, 233 F.3d at 967; Harris Custom Builders, Inc. v. Hoffmeyer, 140 F.3d 728, 731 (7th Cir. 1998).

As for the second hurdle confronting Gentieu's demand for fees, even if she should nonetheless be considered as having merited a modest award of fees for her partial recovery--minor as it was in relation to the massive effort at recovery that was represented by her Complaint--the very nature of her claim has rendered it impossible to evaluate the amount of that award. As Ex. 1 reflects, Gentieu's impermissibly exaggerated perspective

7

referred to in the Complaint has carried over to the issue now at hand, for she seeks to obtain a substantial partial recovery in respect of matters on which she lost totally. And even if the nearly $17,000 figure that she labels as "fees related exclusively to license fee recovery accounting/audit issue (Banner & Witcoff)" were to be considered, nothing that Gentieu has said in her submissions enables this Court to make an informed judgment as to what part of that amount would represent a reasonable award in light of the first hurdle discussed above.

Where as here a party requesting a fee award has engaged in such serious overreaching, as well as (relatedly) having made it difficult to determine what amount might fairly be awarded if the court found an award otherwise justified, our Court of Appeals has on occasion disallowed any award in its entirety (see, e.g., such cases as Vocca v. Playboy Hotel of Chicago, Inc., 686 F.2d 605, 607 (7th Cir. 1982) and cases cited there). In light of the nature of Gentieu's submissions, which has really rendered it impossible to make an informed evaluation, conformity to that line of authority appears to be in order, and this Court so decides. Gentieu's claim is denied.

### Copyright Act Claim

Getty's remaining claim, that under Section 505, requires little discussion. As Gonzales v. Transfer Tech., Inc., 301 F.3d 608, 609 (7th Cir. 2002)(most citations omitted) has taught:

> Section 505 of the Copyright Act does not set forth a standard for awarding attorneys' fees to a prevailing party; it merely authorizes such awards. In Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court was asked to align interpretation of section 505 with that of the civil rights attorneys' fees awards act, 42 U.S.C. §1988, under which a prevailing plaintiff is entitled to fees virtually as a matter of course but a prevailing defendant only if the suit is frivolous. The Court in Fogerty refused, reasoning that copyright defenses are as important as copyright claims (a successful defense enlarges the public domain, an important resource for creators of expressive works) and therefore there should be no thumb on the scales. It did not define the unitary standard to be applied to prevailing parties in copyright suits but in a footnote, quoting a lower-court opinion, listed the following nonexclusive factors to guide determination: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence."

Even a brief review of this Court's extended treatment of Gentieu's bootless copyright claim in the Opinion demonstrates that Gonzales, including its recital of the Fogarty-quoted considerations, might well have been written for this case. Indeed, the frivolous nature of Gentieu's copyright claims would have supported an award under the more stringent standard of the civil rights statute.

In sum, Getty has amply demonstrated its right to recover fees under both the 1993 Contract and Section 505. It remains only to quantify that entitlement.

### Amount of the Award

In an effort to minimize the areas of potential dispute,

Getty's counsel has effectively leaned over backward by cutting back materially on the amount of its request.[3] In addition to its obvious exclusion of any time expended on the license fees subject that served as the basis for Gentieu's agreed-to recovery, Getty has eliminated any effort to recover (1) fees billed before Gentieu filed her 562-paragraph declaration under this District Court's LR 56.1 (the rule adopted to implement the summary judgment provisions of Rule 56) and (2) 1/3 of what its application labels "general legal work in defense of the lawsuit." That means Getty's claim encompasses a full recovery for fees related to the breach of fiduciary duty and copyright infringement claims plus 2/3 of that "general legal work."

In a further effort to minimize the area of controversy requiring resolution by this Court, Getty has (though it does not acknowledge the legitimacy of Gentieu's various objections) voluntarily reduced its claim to accede to all but three of those objections. This opinion turns to those remaining objections.

First, there is no merit in Gentieu's objection to Getty's time entries as purportedly excessive and duplicative, so as assertedly not to meet the standard of reasonableness. That contention is scotched both by the general concept of reasonableness (the time reasonably expended multiplied by

---

[3] No objection has been made to the hourly rates charged by Getty's lawyers, so this opinion eschews any discussion of that subject.

10

reasonable hourly rates) and by the fact that Getty paid the fees as billed without any assurance of recoupment from its adversary--the conventional test of market value (see, e.g., Medcom Holding Co. v. Baxter Travenol Labs., Inc., 200 F.3d 518, 521 (7th Cir. 2000)).

Second, it is more than reasonable for Getty to have limited its request to the enormous amount of time its counsel were compelled to expend after Gentieu filed her sprawling 562-paragraph declaration in opposition to Getty's summary judgment motion. Again Gentieu is scarcely in a position to complain about the burden she thrust upon her opponent by that massive response--something about which this Court expressly warned Gentieu and her counsel in its December 6, 2002 memorandum opinion dealing with Getty's motion to strike that declaration.

Finally, Gentieu's objection to the Westlaw charges incurred by Getty's lawyers fails as well. It is well established that Westlaw charges are recoverable as such, and the actual charges reflected Getty's law firm's status as a volume purchaser, entitling it to a discount from normal rates that substantially exceeded the addition of the firm's overhead allocation.

## Conclusion

For the reasons explained at some length in this opinion, Gentieu's petition for fees and expenses is denied. Getty's request for a fee award is granted in full, comprising (1) all

fees related to Gentieu's copyright and fiduciary duty claims (a sum of $503,959.50), (2) 2/3 of the fees related to general litigation work (or $161,922.97) and (3) 2/3 of its out-of-pocket expenses (or $62,425.76), for a total recovery of $728,308.23. Gentieu is ordered to pay that amount to Getty on or before September 12, 2003.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 28, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENNY GENTIEU and            )
PENNY GENTIEU STUDIO, INC.,  )
        Plaintiffs,          )
                             )   Civil Action No. 00 C 269
        v.                   )
                             )   Judge Milton I. Shadur
TONY STONE IMAGES/CHICAGO    )
INC., and GETTY IMAGES, INC.,)
                             )
        Defendants.          )

## JOINT STATEMENT PURSUANT TO LOCAL RULE 54.3

Pursuant to section (e) of Local Rule 54.3, the parties Penny Gentieu and Penny Gentieu Studios, Inc. ("Gentieu") and Tony Stone Images/Chicago, Inc. and Getty Images, Inc. ("Getty") submit the following Joint Statement with respect to the motions for fees and expenses filed by Gentieu and filed by Getty.

### Gentieu's Fees and Expenses Request

Gentieu claims attorney's fees of $125,556.59 and related expenses of $8,047.12.

Gentieu calculates this claim as follows:

| Category of Fees/Expenses | Base Amount | Recovery % | Category Total |
|---|---|---|---|
| Fees related exclusively to license fee recovery accounting/audit issue (Banner & Witcoff) | $16,926.50 | 100% | $16,926.50 |
| Fees related to general litigation work and work on common issues (Banner & Witcoff) | $225,962.75 | 33.33% | $75,313.38 |
| Contingent fee payment (Davis, Mannix & McGrath) | $33,316.71 | 100% | $33,316.71 |
| Expenses | $24,143.78 | 33.33% | $8,047.12 |
| | | | $133,603.71 |

Ex. 1



LAW OFFICES

# McDonnell Boehnen Hulbert & Berghoff

JOSHUA R. RICH
DIRECT DIAL: (312) 913-2133
E-MAIL: rich@mbhb.com

32ⁿᵈ FLOOR
300 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606
TELEPHONE: (312) 913-0001
FACSIMILE: (312) 913-0002

January 31, 2000

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

**BY FACSIMILE (312) 715-1234**
**AND UNITED STATES MAIL**

Ms. Patricia A. Felch
Banner & Witcoff, Ltd.
10 S. Wacker Drive
Chicago, Illinois 60606

Re: *Penny Gentieu v. Tony Stone Images/Chicago Inc.*
Civil Action No. 00 C 0269
U.S. District Court for the Northern District of Illinois

Dear Patsy:

As we discussed last Thursday, January 27, 2000, both the plaintiffs and Tony Stone Images/Chicago, Inc. ("TSI") and Getty Images, Inc. ("Getty Images") in the above-captioned matter agreed to a seven-day extension of the temporary restraining order entered by Judge Shadur. In the interim, we have received and reviewed the transcript of the hearing on January 27, 2000. In light of the Court's statements with regard to his earlier oral Order, we believe that paragraph 5 of the Temporary Restraining Order should read:

> 5. Accordingly, this Court grants Plaintiffs' motion for temporary restraining order to require Defendants to take whatever affirmative action is within their power in order to prevent third parties from copying, distributing and making derivative copies of Photographer's Images.

We note that it would be improper under Rule 65(c) of the Federal Rules of Civil Procedure to have any reference to "Exhibits E, F, and I attached to the Verified Complaint" in paragraph 5 because Rule 65(c) prohibits describing the terms of a restraining order "by reference to the complaint or any other document."

The plain language of the Court's January 14, 2000 oral Order demanded that the TSI and Getty Images take "whatever steps they have to take in order to accomplish cessation of" allowing "third parties to copy, distribute copies, and make derivative copies" of Ms. Gentieu's Images. (01/14/00 Transcript at 8, 9). Indeed, as the Court clarified his earlier oral Order on

Ex. 2

January 27, 2000, the temporary restraining order "makes it plain that all that can be required of them is to take whatever affirmative action is within their power in order to prevent third parties from copying, distributing and making derivative copies" of Photographer's Images. (01/27/00 Transcript at 10, 11). This relief is consistent with the relief requested in the plaintiffs' Motion for Temporary Restraining Order, which prayed for the Court to enter a temporary restraining order "enjoining defendants from permitting third parties to copy, distribute copies and make derivative copies of Photographer's Images."[1]

In full compliance with the Court's oral Order (and consistent with the plaintiffs' requested relief), TSI and Getty Images took all steps necessary to halt their licensing of third parties to copy, distribute, or make derivative copies of Ms. Gentieu's Images.

The plaintiffs drafted a proposed Agreed Order to Be Entered *Nunc Pro Tunc* and sent the proposed Agreed Order to Getty Images's in-house counsel on January 17, 2000. As the Court later remarked, the relief suggested in that proposed Agreed Order "does not match what [he] had said." (01/27/00 Transcript at 7). Recognizing that inconsistency, Getty Images's in-house counsel proposed alternative language and noted to the plaintiff's counsel, "As Judge Shadur pointed out, in order for TSI to stop others from using Gentieu's Images, TSI itself must stop distributing them." Getty Images's in-house counsel also provided her cell phone number and requested that the plaintiffs' counsel contact her to discuss the proposed Agreed Order. The plaintiffs' counsel did not do so. Indeed, Getty Images's in-house counsel thereafter attempted to contact plaintiffs' counsel several times but received no response.

The following week, we contacted you after being retained to represent TSI and Getty Images. At that time, you indicated that you did not agree to the changes proposed by Getty Images's in-house counsel. That was the first indication whatsoever to TSI and Getty Images that you believe that the Court's temporary restraining order did not require TSI and Getty Images to stop acting as Ms. Gentieu's agent and distributing her Images. It was that disagreement that sent the parties before the Court again. Not until after the January 27, 2000 hearing before the Court did the plaintiffs indicate in writing that they did not want the scope of the temporary restraining order to prohibit TSI and Getty Images from acting as Ms. Gentieu's agent. Thus, we believe that all of TSI's and Getty Images's actions have been fully compliant with the Court's Orders and that neither has breached any contractual obligations by acceding to the relief requested by the plaintiffs. Furthermore, we believe that TSI and Getty Images have acted properly at all times.

We believe, however, that the parties' dispute would be best handled expeditiously and in a manner that would not overburden the Court with needless proceedings. To that end, we suggest the following means of alternative dispute resolution:

---

[1] While the plaintiffs also sought to get the Court to enter a temporary restraining order "requiring defendants to comply with the Gentieu-TSI license," the Court expressly indicated that he had not ordered relief of that sort. Indeed, he remarked, "Notice that I had made no expression at all on what the situation was in terms of the contractual relationship between the parties." (01/27/00 Transcript at 14).

1. The parties agree to an independent, third-party auditor who will perform a financial audit of the relationship between the plaintiffs and the defendants. The parties will split evenly the expense of the audit. At the conclusion of the audit, the auditor will render a decision determining whether any party is due additional funds under the contractual relationship and, if so, assessing that amount against the other party. The auditor's decision will be final and unreviewable by any court.

2. The plaintiffs will dismiss the above-captioned action with prejudice, with each party to bear its own costs and fees, including attorney's fees.

3. At the conclusion of the audit, the relationship between the parties, as memorialized in the "Contributor's Agreement with TSI" reproduced as Exhibit A of the Verified Complaint, will be severed and no contractual relationship regarding licensing will exist between the plaintiffs and TSI or Getty Images.

4. The terms of the agreement pursuant to which the above-captioned matter, as well as the results of the financial audit undertaken pursuant to the settlement, will be held in confidence by all parties and all parties will agree not to disparage any of the other parties in any manner and to take all steps to prevent third parties from disparaging any of the other parties.

In order to expedite the resolution of this matter, please inform us by the close of business on Thursday, February 3, 2000 if you are willing to agree to these terms.

Please feel free to contact us directly if you should have any questions.

Very truly yours,

Joshua R. Rich

cc: Ms. Alicia Brillon